The next case this morning is 522-0815, People v. Logan. Arguing for the appellant is Elliott Bourchard. Arguing for the athlete is Becky Ray. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning. Before we get started, obviously we're running a little late. We had some early technical difficulties in the last argument. We took a little longer than we expected, so we appreciate your patience. If you will note, the timer, we're having issues with, you know, the timer, not in the timer itself. It's making sure it's being able to seen, but just because of our camera and whatnot. So, you know, if you can keep an eye on that, please do, and we'll try to watch the time as well. So, Mr. Bourchard, are you ready to proceed? I am, your honor. Then go right ahead. Thank you, your honor. Good morning, your honors, and good morning, counsel. May it please the court, I'm Elliott Bourchard from the Office of the State Appellate Defender. I represent the defendant appellant Myron Logan in this case. From the police investigation, to pretrial procedure, to the trial itself, this case featured sloppy practices. Today, I plan to focus on how the police were sloppy when they took a swab of Logan without a warrant, and how the state was sloppy in presenting evidence to the point that it presented insufficient evidence of Logan's guilt of armed violence. I plan to stand on the briefs of the remaining issues demonstrating the sloppy practices in this case. Now, to start out with this DNA swab, and that being an illegal search, the issue is actually rather simple. The case law establishes that, excuse me, taking a swab constitutes a search, and that you need a warrant to be able to do so. And Hockaday here did not have a warrant, so that ends the analysis there. This was an illegal search under the Fourth Amendment and under the Illinois Constitution. Accordingly, the swab and the fruits thereof, namely the DNA evidence specifically, and testimony concerning the results of that analysis, should not have been admitted into evidence. And regarding the latter, we know it's a fruit of the poisonous tree because it is a direct result of the swab itself. Detective Hockaday said so himself. He told Logan explicitly during the interview that he was going to use that swab to compare to any DNA that was found on the gun. So I think that this tells us that there were no attenuating circumstances. Additionally, I think Hockaday's conduct here would qualify as something as flagrant. It does disregard unambiguous precedent from the appellate court and from the United States Supreme Court in that taking a swab constitutes a search, and specifically from Ely, that you need a warrant to do so. And I also think it's something that we could also conclude is intentional based on the blatant violation, and additionally, given how Hockaday treated Logan with regards to his other rights. I know the Miranda issue is a separate issue here, but I think we could also look at that here to establish the intentional conduct here. I mean, Hockaday went over Logan's Miranda rights in the course of seven seconds, not stopping to breathe between the first and third rights and speaking faster at any point, or at that point, than at any other point during the interview. So I think it's clear here that Hockaday simply did not care about Logan's rights here. So I think that establishes some flagrant conduct and that this is the fruit of the poisonous tree as well. I do want to touch briefly on the Rule 413 argument the state made in its response brief. The bottom line here is the state never proceeded under Rule 413. It never got an order to obtain the DNA under Rule 413. What was used was the swab that Hockaday obtained from Logan to tie him to the gun. Rule 413 specifically says that it is not, or it is subject to constitutional limitations. I don't think we could sit here and say, well, if we would have gotten the DNA under Rule 413, or because his DNA was already in the system because of a prior juvenile adjudication, I don't think we could allow that to excuse the failure to obtain a warrant here, because at that point, what's the point of the Fourth Amendment and the warrant requirement? Council, why wasn't this a permissible search incident to an arrest? Sir, I don't think it was a permissible search incident to arrest, because search incident to arrest covers, the reason for that exception is something different than what was going on here. Search incident to arrest covers two prongs, really. I mean, the first prong is to collect evidence, and the second prong is to ensure that the detainee is not going to be bringing anything into the jail or custodial setting that's going to so on and so forth. But this is something that is completely different. The evidence collection, or the swab here is solely for evidence collection, and Hakaday said so himself. And I think Ely is something that is, it addressed this issue before. If you're going to take a swab, you need to have a warrant for that. So I think Ely is something that is directly controlling here. Council, was that issue preserved for appeal, though? Remind me, I know there's a lot of issues in this case. So the DNA swab, it was not, Your Honor, but we do raise it as ineffective assistance to counsel for counsel not moving to suppress it as an illegal search. Thank you. No problem, Your Honor. So the DNA evidence and testimony concerning it is something that should not have come in evidence because it was an illegal search, but it ultimately still wasn't evidence. And even with it in evidence, the evidence was insufficient to prove Logan guilty beyond a reasonable doubt of armed violence. The evidence in this case only established five things, really, five key things, rather. First, that Logan fled and eluded, that's not something that we're conceding, or that we are conceding for purposes of the sufficiency of the evidence. Second, that a gun and magazine were found a block away on the path that he took during the chase. Third, that there was a passenger in his car. Fourth, that there are four or more contributors to DNA on the gun itself. And fifth, that Logan may have been one of the four contributors to the DNA on the magazine. But even if we're going to assume arguendo that the gun and magazine were in the car, the state still cannot establish that he was armed with a dangerous weapon because we don't know where exactly in this car this gun and magazine were. At least for purposes of determining whether Logan was otherwise armed, this is something that I believe is outcome determinative. It makes the state's reliance on Harron Frederick inapplicable because in those cases, we knew where the gun was in those cases, and thus it was something that was reachable. And that's something I think the courts ultimately hung their hand on in this case. The whole purpose behind this armed violence statute is to deter felons from making rash decisions to use deadly weapons that could potentially lead to deadly consequences. But if we ultimately don't know where the gun is in this case, in the car, assuming it is there, then we can't say that it was within reach, first of all, or that he would be deterred. The purpose here is just simply not established. But also if we also assume that the... But I'm going to interrupt you. There was DNA evidence found on the magazine, correct? There was. And then the magazine was found outside of the car and the gun was found outside of the car, correct? The magazine and gun were found on the path of the chase a block apart, yes. So, I mean, there's an inference then it was thrown from the car. So at that point, couldn't you also infer that it was within reach? I don't think we can, Your Honor, because there is a passenger in the car. In the front seat? In the front seat? So I think in the squad video, there was... Yeah, the driver and the passenger were both up front. But just because the passenger... If we're assuming the passenger was the gun, that doesn't necessarily mean that it was reachable by Logan. Also, it doesn't necessarily mean that he knew that the gun was present in the first place. I think something that he needs to know for armed violence is the gun's presence. There's no proof here that he knew that the passenger had the gun here. But additionally, excuse me, if we are assuming that this gun and magazine were in the car, there's no evidence that he possessed it. During the offense, or that he possessed it at all, really. We know, as I mentioned, that there was a passenger in the car and we saw or nobody saw a gun or a magazine getting thrown out. The gun and magazine were something that were found separated. And there is no magazine, no evidence that the magazine ever went inside the gun, which is something that the state conceded below. Something that Condon relied on as well was user display of the gun. That's something that there's no evidence here as well. And again, there are four DNA profiles on the gun. So even if we're going to accept the testimony that Logan's DNA is on the magazine, this does nothing to establish that he possessed the gun, a separate piece, and that if he did so, that he did so at the time of the offense, especially when considering there was a passenger in this case. After all, there was no testimony that Logan was the major contributor. It's just a guess that he was. And even assuming he was, it doesn't mean that he possessed the gun during the chase. The percentage of DNA on a gun has nothing to do with the timing. It just tells us that the particular individual left a certain amount of material on the gun. The element here is he has to have possessed the gun at the time of the offense, at the time he fled or eluded. So at most, his DNA tells us that he may have possessed the magazine at some point, but it doesn't necessarily mean that he did so at the time of the offense here. But that's up to the trier of fact to take this evidence and reasonable inferences from the evidence that of the chase, found the gun, found the magazine, you know, that the trier of fact has to look at all of that, correct? Yeah, it's ultimately the trier of facts, this decision here with regards to what happened here. But just based on the evidence that we have here, I don't think it's even a to make that he possessed the gun at the time of the chase when there's four DNA profiles on this gun. Sure, I think we can make the reasonable inference that he possessed the magazine at some point, but first, it's just the magazine and not the gun. And second of all, there were three other DNA profiles on the weapon as well. So it establishes that he may not necessarily have possessed the gun at the time of the offense. It could have been the passenger as well who possessed it at the time of the offense. With my remaining time here, I just want to briefly comment on the DNA evidence, specifically with regards to the numbers pitched for testifying to it. Just want to stress, this is 66 sextillion. That is 66 followed by 21 zeros. That is an extremely large number, an unfathomable number, and numbers that even when we're talking about billions of legal scholars and mathematicians express significant doubt about them being used in court. So I think based on that alone, Red Flag should have been raising the court about her credibility and the analysis of her testimony, in addition to counsel's deficient performance for not recognizing that himself. And I do recognize my time is about up, so I'll conclude here and save for rebuttal. Well, before we move on, Justice McKinney or Justice Scholar, do you have any questions? Well, counsel, your concern with these large numbers, are you saying that no DNA statistical analysis should be allowed that exceeds the population of the earth? So I'm not saying this is a question of admissibility, Your Honor. This is more a question about counsel's performance. I think hearing this type of number, 66 sextillion, I would push back to a little bit on that, Your Honor. It is a number that exceeds the amount of people on earth, but it's substantially more than that. It's many more times than that. But I think the true issue here is counsel's performance. I think no reasonable counsel upon hearing that number would recognize, hey, this is something that's subject to challenge, especially considering without the DNA evidence, there's really little to tie Logan to the gun, assuming that the DNA evidence does in the first place. All right. Thank you. Thank you, Your Honor. Judge Schoeller, any questions? No questions. All right. Thank you, counsel. Obviously, you'll be given your rebuttal time. Ms. Wray, if you're ready, go right ahead. Good morning. May it please the court, counsel, I'd like to start with the issue of ineffective assistance of counsel, specifically regarding the DNA, the taking of the DNA. Defendant asserts that the law requires under Ely that a warrant be obtained before the DNA can be taken from a suspect. And I assert that that is not what Ely says. And contrary to that, DNA can be obtained in other ways, consent, order of the court, or a warrant, as counsel argues. In this case, I believe that the taking of the DNA could be equated with a booking procedure, just like fingerprinting or photographing, et cetera. And regardless, while Ely said it generally requires a warrant because of the privacy interest and the bodily integrity of the suspect, the privacy interest here was diminished because the defendant was in custody for a felony offense. And as far as the bodily integrity of taking that buckle swab, it was a de minimis intrusion. And overall, I think that, excuse me, Hockaday was authorized to take that. Even if the defense counsel was ineffective for not filing a motion to suppress that DNA, defendant cannot say that he was prejudiced by that for the reasons stated in the state's brief. That DNA was available otherwise. Like I said earlier, the state could have obtained from the court an order directing the defendant to provide his DNA. That's one way. Did they do that? No, but they didn't have the opportunity to do that because this DNA that Hockaday took wasn't suppressed. There was no motion to suppress filed, so there was no reason for the state to obtain the court order to get that because they already had it. Even if they had not sought out the Rule 413 order to get that, the defendant's DNA was available another way as well. He was on probation in a juvenile case and had provided his DNA, and the pre-sentence investigation supports that. It indicates that it was provided on a particular date prior to this arrest, and so the state could have used that DNA that way. While the sample that the state did use was the one that Hockaday took, again, the state didn't need to obtain it another way because there was no motion to suppress the DNA that was taken by Hockaday. But had they done so, the DNA would still have come into this case, and therefore the defendant was not prejudiced by counsel not filing the motion to suppress because it would have still come in. And then with regard to the Miranda waiver, the reviewing court has to look at the totality of the circumstances. Sure, it was quick. He may not have taken a breath between, you know, reading one right and reading the next one, but the factors that the court has to consider are the defendant's age, his intelligence, prior experience with the court system, his emotional stability, and the manner in which he answers the questions. And when you look at all of those things in totality, the defendant, yes, a young age, 18, but he had prior experience with the court system. He was on probation, as I said, in the juvenile case. He had graduated high school, and while counsel in its brief indicated that defendant fell behind in school, it wasn't due to lack of understanding or lack of knowledge. It was due to being put into the juvenile justice system, and that's why he fell behind. It wasn't because of any learning disabilities. Defendant was not in special ed. He had no mental health issues or disabilities that would preclude him from understanding what his rights were. And I think you have to look at his emotional stability and the manner in which he answered questions. He didn't seem fearful of Hockaday. He did not seem hesitant to tell Hockaday he was wrong or that his brother was lying if his brother said the gun was defendant's gun. So, basically, in looking at the situation in totality, the defendant's will was not overborne here when Hockaday was interviewing him. And I think that based on all of the circumstances that I've listed, the factors that I've listed, defendant's Miranda waiver was voluntary. Now, regarding the sufficiency of the evidence, the possession of the weapon, I think Justice Scholar was correct when she stated that in order for that gun to have been thrown out of the vehicle and the magazine as well, someone had to have touched it. It had to have been in someone's possession, in someone's reach. Now, do we know if that was the defendant or the one passenger that was in the front seat of the vehicle with the defendant while he was driving? No. However, the law is that possession can be joint. And while most of those cases are narcotics cases rather than weapons cases, I think the principle applies here as well. If you said that joint possession precluded either of the people from possessing the gun in this case, I think you would defeat the purpose of the statute itself, which is, you know, protection of officers, the general public. And I think that another reason that you can't say joint possession precludes either of them from being charged possession of that weapon, because then you allow someone who's obviously guilty of possessing that weapon to go free, contrary to the law. Doesn't that, doesn't joint possession require some degree of knowledge? Yes, I agree with that. And I think that it's shown in this case, because... If the defendant would have pulled over and the officer would have searched the passenger and found heroin in his right front pocket, are you saying that the defendant could have been charged for possessing that heroin without any evidence whatsoever that he knew it was there? No, Your Honor, I'm not saying that at all. Had it been in the passenger's front pocket, then obviously the defendant could not see that it was in his front pocket and without... Maybe the gun and magazine here were in the passenger's front pocket without the defendant's  Well, they didn't remain in the passenger's front pocket. They clearly had to have been removed at some point for them to end up outside the vehicle. And not only that, but the fact that the defendant's DNA was on the magazine shows that he had knowledge of that. Otherwise, his DNA couldn't have ended up on there. Not necessarily evidence of knowledge at the time of the offense. Maybe he shot the gun a week earlier. Maybe he did, but his DNA was on it. So that at least shows that he possessed that and the fact that it ended up on the side of the road and was not still in the vehicle at the time that the pursuit was occurring shows that he had knowledge of it at that point. And we don't know who threw it out. Defendant could have thrown it out. Contrary to counsel's argument in his brief that he couldn't do that and drive the vehicle safely. Case law refutes that. Clearly, there was no concern that he operate that vehicle safely. So I assert that the defendant knew that the magazine was in the vehicle. It had his DNA on it. Therefore, circumstantially, he also knew that the gun was in there. They go together. It was a Glock gun and a Glock magazine. There was testimony about that. And as the court below said, they go perfectly together. And the court had the duty to make that inference, the responsibility to make that inference, and it did so. And I think this court should defer to that finding of the lower court. We're not here to retry this defendant. And based on the evidence presented, the court made the inference that defendant had the of the weapon and the magazine that went with it. They ended up outside the vehicle. They couldn't just have fallen out. The vehicle didn't overturn or crash or anything like that. They had to have been thrown out. And whether it was the defendant or the passenger that threw them out, clearly, defendant had the knowledge of that. Not only that, but I think you can draw, I know you can draw a consciousness of guilt inference by the fact that he fled from his own home, from the front yard of his own home, and immediately began a high-speed pursuit. That shows consciousness of guilt. He knew there was something in that vehicle that he didn't want to be caught with. And the reasonable inference is that it was the gun and the magazine, which was found along his flight path, which defendant conceded was found along his flight path, just a block or so from his vehicle, I believe, when it was stop stick. He didn't even stop voluntarily. The police stopped him. So, I think in looking at the totality of the evidence in this case, knowledge can be inferred of the magazine. Knowledge can be inferred of the weapon. Possession of, as I said, regardless of whether defendant possessed it or the passenger, you can have joint possession. And I think that was obvious in this case based on the DNA evidence. For all of these reasons and the reasons in the state's brief, I would ask this court to affirm the defendant's conviction. Thank you. Well, thank you, counsel. Before we move to rebuttal, Justice Scholar or Justice McKinney, do you have any questions for Ms. Wray? No questions. All right. Thank you, counsel. Go right ahead with your rebuttal. Thank you, Your Honor. Just starting off here with the Fourth Amendment issue here. I'm going to interrupt you, counsel. Can you address counsel's argument about the consciousness of guilt argument? Yes, Your Honor. Happy to. So, I think the bottom line with that is that I don't think, I mean, what is there to be guilty of at this point at the time he fled? I mean, assuming the gun was in the car in the first place, there's nothing established that his possession of it was illegal, especially of the Second Amendment right to bear arms. Regarding cannabis being in the car, there's nothing to establish that possessing its possession was illegal or that it wasn't stored properly. It can't be evidence of guilt for armed violence because there's nothing to be guilty of in that regard until he actually fled in the first place, given that's the predicate. So, logically speaking, he can't flee armed violence when he couldn't commit armed violence until he fled in the first place. So, I think here, Your Honor, what we have is an 18-year-old who simply wasn't using his best judgment, and we know 18-year-olds as emerging adults don't always do that. After all, when the court was issuing its decision, it said he's an 18-year-old male and finding him guilty, I think that's the court implicitly recognizing he wasn't using his best judgment as an 18-year-old. I mean, I'll stick to the sufficiency piece here before moving back to the Fourth Amendment issue here. But the state a couple minutes ago just conceded that we do not know if it was Logan or the passenger in the car who threw out the gun. I think that's enough right there. That is enough to find the evidence insufficient. Joint possession is a situation that doesn't apply here because, as Justice McKinney pointed out here, you have to have knowledge of the gun's presence. There's no evidence of that, and I think the state here is trying to argue, well, the DNA evidence is evidence of knowledge. But he had to possess it at the time of the offense. He cannot be guilty of armed violence unless he possessed it at the time of the predicate felony. And the DNA evidence, again, only establishes that most that he possessed the magazine, not necessarily the gun at one point in time, but not necessarily during the chase. The court made reference to its reliance on that Frederick's case. I do think Frederick's is readily distinguishable because simply here there is a passenger in the car. I think part of the reason the Frederick's court reached the decision it did is there's no evidence that there's a passenger in the car, and it found that he could reach over to reach the gun, even though he may have had to contort his body. By there being a passenger in the car, it could have simply been the passenger's possession. And again, the defendant, Logan, here may not have even known about that gun's presence. So I think Logan is distinguishable on those grounds. Turning back to the Fourth Amendment issue here, the state pointed out that there is no reason for the state to use Rule 413 because counsel never filed the motion. But it's not up to the defendant to assert his rights under the Fourth Amendment. It is the police's job to adhere to the defendant's rights under the Fourth Amendment and to up front and to get that warrant. And that's something that simply did not hear. What about the inevitable discovery doctrine that the evidence would have been found because of the DNA in the probation case? In his juvenile case? Yeah. Your Honor, I don't think that's something that's applicable here simply because the proper procedure here was not followed. It's not that the state didn't use his prior DNA from the prior adjudication or go through Rule 413. They simply just took the swab. And that is ultimately what was used here. Regarding Logan having a diminished expectation of privacy while in custody, I don't think lose their privacy rights or that they could be subject to searches for evidentiary purposes just because someone is in custody. The Fourth Amendment prescribed the proper procedure, and that is to get a warrant. And I think if we were to say, oh, because someone's in custody, we could simply search for any and all evidence we want, that has the potential to be a slippery slope that leads to the erosion of the Fourth Amendment as a whole. Finally, I do want to talk about this Miranda issue and rebut what counsel said here a little bit. It goes beyond the fast pace of the warnings here. I mean, Logan also has to have the opportunity to invoke his rights. And that also was something that was not provided. Immediately after Hockaday read Logan his rights, he immediately started questioning him about his background information, going over some biological information that he had and then moved into questioning about the interrogation here. So there simply was no opportunity for Logan to invoke his rights because of that. And that's something that Logan requires. If the court has no further questions, Logan respectfully requests that this court reverse his armed violence conviction and remand aggravated fleeing for a new trial, or in the alternative, remand both for a new trial or remand aggravated fleeing for sentencing. Well, thank you, counsel. Justice McKinney or Justice Schiller, do you have any final questions? No questions. Well, thank you, counsel. Obviously, we will take the matter under advisement and we will issue an order in due course.